THOMAS WILLIAMS v. STATE OF INDIANA.

[No. 1173S223. Filed October 30, 1974.]

*Nick J. Thiros, Donald P. Levinson,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction for Kidnapping and Rape in a trial by jury in the Lake Criminal Court. Appellant was sentenced to life imprisonment and two to twenty-one years.

Appellant's first contention is the trial court erred in overruling his motions to suppress and to strike the testimony of the victim identifying him as one of her assailants. These motions were made on behalf of appellant and a co-defendant, Jimmie Manns. Appellant and Manns were jointly charged, tried and convicted of these offenses. The motions were based upon the assertion that the testimony of the victim which served to identify both appellant and Manns as her assailants was the product of the improper use of photographs by the police in soliciting an identification from the victim. The police testified that they had displayed photographs of appellant and Manns, without others, to the victim, verbally identifying them as suspects and urging that an identification of them

be made. The trial court ruling denying these same motions was the subject of the separate appeal by the co-defendant Manns. It was decided in that case, *Manns* v. *State* (1973), 260 Ind. 680, 299 N.E.2d 824, (DeBruler, dissenting), that the repeated display of a single mug shot of a suspect to a victim, coupled with remarks suggesting that a positive identification is warranted is improper. A majority of this Court in *Manns,* upon reviewing the opportunity of the victim to view her assailants at the time of the offense, went on to conclude that such opportunity was ample and provided an independent basis for the in-court identification. In arriving at this conclusion, the Court relied upon *Neil* v. *Biggers* (1972), 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401. The ruling of the trial court on these same motions, now before the Court in this appeal was found to be not error.

Appellant points out two considerations unique to his case which make the risk of misidentification of him by the victim greater than it was for Manns. First, appellant claims that on the day following the crime, the victim was unable to identify him from the photograph displayed to her by the police. However the record does show that she tentatively identified *both* appellant and Manns from the photographs as looking like the men who had abducted her. At the subsequent line-up, she identified appellant, while unable to choose Manns. In *Manns, supra,* the Court summarized the events surrounding the crime:

> "At approximately 10:00 p.m. on March 25, 1970, the nineteen-year-old victim was driving home in heavy snowstorm. She noticed a car following her as she turned into the alley behind her family's house. When she stopped her car, the other auto pulled up beside her and a man got out of the car. This man was subsequently identified at trial as the co-defendant, Thomas Williams. Williams apologized to the victim for following her and stated that he had mistaken her car for another belonging to his brother-in-law.. He then returned to his automobile. The victim then parked her car in the garage, got out, and saw Williams standing at the garage door. He put a gun to her side and grabbed her arm. A second man appeared, who was later

identified as the appellant, and the two men forced the girl into the back seat of their car. When they found that their own auto was stuck in the snow, the men put the girl into the back seat of her own car, threw a coat over her head, and drove away. After a drive of approximately twenty minutes, the man stopped the car. They allowed the victim to sit up while holding her at gun point.

\* \* \*

"After the sexual assaults were completed, the appellant and Williams returned the victim to the general vicinity of her home, told her that if she reported the incident to the police she would be killed, and got out of the car. The elapsed time since the abduction was approximately one and one-half hours." 299 N.E.2d at 824-825.

As can be seen, the victim had two separate views of appellant alone that she did not have of Manns. The first such occasion was at the initial encounter by appellant at the garage door. The second, when appellant returned and forced her across the alley into the waiting car. If anything, the opportunity of the victim to view the appellant was greater and therefore upon consideration of this factor the risk of misidentification is less for appellant than it was for Manns.

Appellant also argues that there was considerable collateral and corroborative evidence which served to identify Manns; namely the identification cards, checks and other documents belonging to Manns found in the auto at the scene, while no such extra evidence served to link appellant with the crime. Appellant also points out that he, unlike Manns, called four members of his family who supplied him with an alibi for the time of the crime. At stake here is the reliability of the victim's identification of him. *Foster* v. *California* (1969), 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402. The extent of corroborative evidence, if any, and the alibi evidence are not factors to be considered in evaluating the likelihood of misidentification by the witness. *Neil* v. *Biggers, supra.* Such evidence was not part of the experience of the witness and did not influence her identification. It was not error for the trial court to permit the victim to identify appellant.

Appellant next contends in his Belated and Amended Motion to Correct Errors, that Edward Reardon, Commissioner of the Lake Criminal Court, did "not have judicial power or authority to conduct a jury trial, accept a verdict of guilty, enter final judgment of conviction, or to overrule the various motions to correct errors herein." He contends that the statutory provisions defining the duties of the commissioner limits the commissioner to making findings and conclusions "under the final jurisdiction and decision of the judge of the court." The statute, since repealed, provides:

"The judges of criminal courts in counties having three or more cities of the second class, may appoint a commissioner. The salary of the commissioner shall be twelve thousand dollars ($12,000.00) per year.

"The commissioner so appointed shall be a lawyer, licensed to practice law in the State of Indiana, and he shall have the authority to administer oaths in the same manner as the clerk of the court. At the direction of the judge he may take and hear evidence on any matters in litigation before the court. He shall supervise the clerical work of the court and attend to the enforcement of court rules and regulations, and make reports to the court concerning his doings, including the taking and hearing of evidence, together with his findings and conclusions, all to be under the final jurisdiction and decision of the judge of the court. He may also serve as judge pro tempore. He may serve as special judge with full powers to try and dispose of any case or group of cases to which he may be assigned by the elected judge, and shall sign the order book and other books and papers as such special judge. He shall have full authority to rule on such pleadings and to conduct such interlocutory hearings as the elected judge may assign to him. The commissioner shall take and subscribe to an oath for the faithful discharge of his duties. Said commissioner may be removed by the judge without hearing or cause." Acts 1965, ch. 43, §§ 1 and 2, Burns § 4-5741 through § 4-5742, P. L. 435, §§ 1 and 2, p. 2060 (1971). Repealed by Acts 1973, P. L. 308, § 2.

In this statute the Legislature required the commissioner to have the same legal qualifications as the judge himself, and granted the commissioner plenary powers to be

■ exercised under the direction of the judge. The Legislature intended to provide the judge with a lawyer-commissioner who could help in the disposition of criminal matters pending before the court. The grant of authority to the commissioner is much broader than appellant contends. The authority to conduct a trial by jury and to accept a verdict is fairly understood to arise from the authority to "take and hear evidence in any matters in litigation before the court." To "take and hear evidence" is the act of presiding over the presentation of the evidence whether it be before the judge alone or before a judge and jury. The authority to conduct a jury trial in a criminal case carries with it the authority to accept the verdict of the jury and to at least, as is the case here, pronounce the executed, mandatory sentences of two to twenty-one years for Rape and life imprisonment for Kidnapping. Additionally, the actions of the commissioner are clearly within the jurisdiction of the criminal court to which he was appended.

The judgment of the court is affirmed.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 317 N.E.2d 847.